[No. S005219. Dec. 1, 1988.]

DONALD WILLIAM BOEHME, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Lawrence William Steinberg for Petitioner.

Diane C. Yu and Truitt A. Richey, Jr., for Respondent.

**OPINION**

**THE COURT.**—In this proceeding we review the recommendation of the State Bar Court that Donald Boehme, who was admitted to practice in 1961, be disbarred. We conclude that the recommendation is too harsh and decline to adopt it. As will be explained, we believe that the discipline recommended by the hearing panel is sufficient and therefore conclude that it should be adopted.

The Review Department of the State Bar Court (Review Department) adopted the hearing panel's findings of fact and statements of evidence regarding mitigation and aggravation. It made its own conclusions of law, however, and by a vote of 11 to 1 increased the recommended discipline to disbarment. The hearing panel had recommended that Boehme be suspended from practice for five years but that execution of the suspension be stayed and he be placed on probation for five years on conditions including actual suspension for eighteen months and until Boehme makes restitution.

In January 1982, Boehme was retained by Suttasunt Nontavanich to represent him in connection with his claims for personal injury and proper-

ty damage sustained in an automobile accident. The retainer agreement provided that Boehme was entitled to a fee of 33⅓ percent of a recovery by way of settlement.

On November 12, 1982, Boehme wrote Nontavanich at his father's clinic in Bangkok, Thailand, advising him that he had secured a settlement of his case for $5,000. He requested Nontavanich to sign the back of the enclosed $5,000 draft, date and sign the release, have three people sign the release as witnesses, and return the documents in the enclosed envelope. Boehme stated that the draft would be deposited in his trust account and that after the draft cleared the bank, which would take about 14 days, he would send Nontavanich a check for his share of the settlement (after deducting the appropriate doctor and attorney fees) to that address in Thailand.

Nontavanich executed the documents as directed and mailed them to Boehme along with a request that Boehme use a Bank of America money order for overseas convenience in paying him his share of the settlement. Boehme deposited the settlement draft in his trust account on December 22, 1982.

On February 16, 1983, Albert Lyman of the Bangkok law firm Tilleke & Gibbins, wrote Boehme requesting him to contact Lyman regarding the settlement. On March 22, 1983, Tilleke & Gibbins wrote Boehme again requesting payment of the settlement proceeds to Nontavanich, referring to the lack of response to the February 16 letter, and stating that if a response to the current letter were not received within 30 days, the matter would be referred to the State Bar of California.

On January 19, 1983, the balance in Boehme's trust account was $839.87. At that time there should not have been less than $3,335 in the trust account, of which $1,901.32 was Nontavanich's share of the settlement and $1,433.68 was owed to Dr. Leslie Simon pursuant to a medical lien for medical services rendered to Nontavanich. Dr. Simon was not paid until a date substantially after January 19, 1983.

On February 15, 1983, Boehme experienced a life-threatening medical emergency which caused him serious health problems through the remainder of 1983. At times he was totally incapacitated and at other times seriously restricted in his ability to devote full time to the practice of law.

Before the onset of his health problems, Boehme failed to use reasonable diligence and his best judgment in an effort to accomplish the purpose for which he was employed. Boehme willfully misappropriated $1,901.32 of his

client's trust funds, and he willfully committed acts involving moral turpitude and/or dishonesty.

Boehme's explanation for not having paid Nontavanich his share of the settlement proceeds was that he paid $2,000 in cash in January 1983 to a bookmaker to whom Boehme believed Nontavanich owed money. Boehme said he made the payment because an acquaintance of Nontavanich told him that the latter had requested the payment be made to the bookmaker. According to Boehme, he honored the request because he had a number of Thai clients and knew it was the custom in the Thai community. Boehme had no receipt for the payment.

In mitigation, the findings note Boehme has never before had any complaints or disciplinary proceedings against him in his 22 years of practice preceding the charged conduct. Two members of the State Bar testified that Boehme is an upstanding member of the bar and enjoys a good reputation among his colleagues. Boehme's illness was found to be a mitigating factor to the extent it justified his failure to respond or act after February 15, 1983.

As aggravating circumstances, the findings cite Boehme's failure to demonstrate any repentance and his attempt to justify his failure to pay by testifying to a set of circumstances which, at best, demonstrates appalling judgment. The single most disturbing factor, according to the hearing panel, was Boehme's failure to voluntarily make restitution to his client during the entire pendency of this matter.

The hearing panel noted that under standard 2.2 of the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V) the appropriate sanction for willful misappropriation of entrusted funds is disbarment unless the amount of funds misappropriated is insignificantly small or the most compelling circumstances clearly predominate. It concluded that compelling mitigating circumstances warranted discipline short of disbarment: the amount of money ($1,901.32) was insignificantly small in terms of the amount of trust funds handled by Boehme over the length of his professional career, and his lack of prior disciplinary record over the length of his career. As noted, it recommended that Boehme be placed on five years probation on conditions including actual suspension for eighteen months and until he made restitution to Nontavanich.

The Review Department adopted its own conclusions of law and recommends disbarment based on its findings that: (1) the amount of money misappropriated was $2,495.13 ($1,901.32 to Nontavanich and $1,433.68 to Dr. Simon less $839.87 remaining in trust account) and that it was not insignificantly small as that term is used in standard 2.2. (2) Boehme's

testimony that he paid $2,000 to a bookmaker was false and intended to mislead the State Bar Court.[1] (3) Boehme had still failed to make restitution despite the hearing panel's emphasis on the absence of restitution. (4) Boehme continued to fail to appreciate the seriousness of his wrongdoing and instead chose to focus on dilatory, technical defenses directed to immaterial procedural issues. (5) Boehme allowed his counsel to give false testimony at the Review Department hearing in stating that restitution had been made and then gave a fabricated explanation for his conduct. (6) Although Boehme's 20-plus years without prior discipline is a substantial factor in mitigation, the character testimony was entitled to less weight because the 2 witnesses were former employees who did not testify to substantial familiarity with Boehme's activities after they left his employ.

In his petition for review, Boehme asserts that certain procedural errors were committed and that the recommended discipline is excessive. We shall consider the claims of procedural error first.

█ Boehme contends the hearing referee's denial of a continuance for him to present two more character witnesses and medical testimony seriously prejudiced him in light of the Review Department's assessment of the lack of weight to be given to the witnesses presented. The hearing in this matter was conducted on five separate days over a two-month period. Boehme was given fair warning on May 14, 1987, that the referee intended to conclude the hearings on May 26, 1987, with the presentation of testimony by Boehme's witnesses. Nevertheless, on May 26, Boehme requested a further continuance to allow him to present testimony by his doctor and two additional character witnesses. He gave no information about the nature of testimony the character witnesses might give or adequate excuse why their unavailability was not raised earlier. The referee ruled that medical testimony was unnecessary in light of the availability of the medical records and refused to grant a further continuance. No abuse of discretion appears. Boehme had fair warning of the need to present his evidence on May 26, and he failed to show any diligence in attempting to comply. Instead, he simply waited until the date set to request a further continuance.

█ Boehme contends he did not have a proper opportunity to present his case to the Review Department. He asserts that he should have been

---

[1] The Review Department explained as the basis for its determination that Boehme had given false testimony regarding the $2,000 payment to a bookmaker: Boehme acknowledged receipt of express instructions from Nontavanich to send his settlement balance to Thailand. The contrary testimony of Nontavanich, which both the hearing panel and Review Department credit. Boehme's inability to remember the exact amount allegedly paid or the source of the cash. The absence of any corroboration in terms of receipts, bank statements or testimony from witnesses. Boehme's failure to convey his story to Nontavanich, Nontavanich's Thai attorney, or to the State Bar prior to initiation of formal disciplinary proceedings. Boehme's misrepresentation to the Review Department regarding whether restitution had been made to Nontavanich.

given a continuance in light of the delay in receiving all of the hearing transcripts and of his counsel's longstanding vacation plans, and that the five-minute limit on oral argument is unreasonable. Boehme fails to show any prejudice in light of the fact that his arguments were directed to procedural points rather than evidentiary matters. Both sides are subject to the five-minute limit on argument, which does not in itself appear unfair. Boehme challenges it with only a sweeping claim of unfairness.

■ Boehme contends that the State Bar examiner should have been disqualified under rule 231 of the Rules of Procedure of the State Bar of California, because he was employed by the State Bar until September 5, 1986. The contention is specious. Rule 231 provides in pertinent part: ". . . former employees of the State Bar shall not represent any party to any matter before the State Bar Court during their term of office and until at least six months have elapsed after expiration of the term for which he or she was . . . employed. In no event shall the . . . employee act in any matter in which he or she previously participated. . . . For good cause, the committee of the Board of Governors may waive compliance with this rule."[2] The Board of Governors waived compliance in this case.

■ Boehme also contends that the recommendation of disbarment is excessive in light of his health problems and prior good record. We agree. ■ At the outset, we note that the Standards for Attorney Sanctions for Professional Misconduct are simply guidelines for use by the State Bar. Whether the recommended discipline is appropriate is still a matter for our independent review. (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754].) ■ The Review Department, in our view, failed to give adequate consideration to the absence of any other disciplinary proceedings or complaints against Boehme in his 20-plus years of practice. The absence of a prior disciplinary record is an important mitigating circumstance, particularly where, as here, the attorney has been in practice a substantial number of years. (*Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132, fn. 10 [202 Cal.Rptr. 349, 680 P.2d 82]; *Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 457 [224 Cal.Rptr. 101, 714 P.2d 1239].) We believe that disbarment would be too harsh for Boehme's single instance of misconduct during his lengthy period of practice.

---

[2] Prior to its amendment, effective February 15, 1987, rule 231 prohibited such representation by former employees "during their term of office and until at least one annual meeting of the State Bar shall have been held after expiration of the term. . . ." Everything else was essentially the same, including the provision for waiver by the Board of Governors.

It is not entirely clear which provision applies since the employment began under the old rule and the motion to disqualify was made after the effective date of the new version of the rule. The point is really immaterial since the waiver provisions applied under either version and a waiver was obtained.

We conclude that the discipline recommended by the hearing panel is adequate to protect the public and is more proportionate to that imposed in other cases. (See, e.g., *Frazer* v. *State Bar* (1987) 43 Cal.3d 564 [238 Cal.Rptr. 54, 737 P.2d 1338] [5 years' probation; 18 months' actual suspension; 14 counts of misconduct involving abandonment of clients and improper loan transactions over same limited time period; no prior disciplinary record during 10 years of practice; misconduct occurred while attorney suffering severe depression]; *Chefsky* v. *State Bar, supra,* 36 Cal.3d 116 [3 years' probation; 30 days' actual suspension; 5 matters involving abandonment of clients and misappropriation of funds over same 1-year period; no prior disciplinary record during 20 years of practice; misconduct occurred while attorney ill and attempting to relocate practice].)

It is ordered that Boehme be suspended from the practice of law for five years; that execution of the order of suspension be stayed and he be placed on probation for a period of five years on the conditions that he be suspended from the practice of law during the first eighteen months of probation and until he makes restitution to Suttasunt Nontavanich in the amount of $1,901 plus interest at the legal rate and furnishes satisfactory proof thereof to the office of the State Bar Court in Los Angeles, and that he take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners during the period of his actual suspension from the practice of law. It is further ordered that Boehme comply with the other conditions of probation set forth in the hearing panel's decision. This order is effective upon the finality of this decision.

Petitioner's application for rehearing was denied January 26, 1989.